STATE OF MAINE

*vs.*

INTOXICATING LIQUORS, MAINE CENTRAL RAILROAD COMPANY,
Claimant.

Androscoggin.    Opinion November 23, 1909.

*Intoxicating Liquors.    Evidence.    Misbranded and Adulterated Liquors.
Same Subject to Seizure.    U. S. Pure Food and Drugs Act,
June 30, 1906, sections 2, 6, 7.*

1.  Where eighty half pint bottles of intoxicating liquors are deposited in
    one lot, the quantity and division into such small bottles are sufficient
    evidence they were intended for unlawful sale, no other explanation being
    offered.

2.  Where the bottles containing intoxicating liquors are labeled as con-
    taining monogram whiskey and are marked "Blend," and the alcoholic
    contents is less, and the residuum from 100 cubic centimeters is more, than
    the standard test prescribed by the Act of Congress known as the "Pure
    Food Act," the liquors are misbranded and adulterated within that Act.

3.  Liquors so misbranded or adulterated are by the Pure Food Act for-
    bidden to be introduced into this State from another State, and hence are
    removed by Congress from the operation of the commerce clause of the
    federal constitution, and become subject to the laws of the State upon
    arrival within its territory and before delivery to the consignee.

On report.    Judgment for the State.

Search and seizure process issued by the Municipal Court of
Lewiston, by virtue of which certain intoxicating liquors trans-
ported from Boston, Mass., to Lewiston, Maine, were seized from
the freight depot of the Maine Central Railroad Company in said
Lewiston, "before delivery to the consignee."

The liquors were duly libeled, a hearing had, and the Maine
Central Railroad Company appeared as claimant.    After hearing,
the Municipal Court declared the liquors forfeited and thereupon
the claimant appealed to the Supreme Judicial Court.    After hear-
ing in the Supreme Judicial Court, the case was reported to the

Law Court "to determine the rights of the State and the claimant, and to render judgment in accordance with the findings."

The case is stated in the opinion.

*Frank A. Morey*, County Attorney, for the State.

*White & Carter*, for claimant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

EMERY, C. J. Eighty half pint bottles of intoxicating liquors consigned to J. Johnson were seized at the freight depot of the Maine Central Railroad Company in Lewiston as intended for unlawful sale.

That the liquors were intended for unlawful sale is readily inferable from the quantity and the division into such small bottles, no other explanation being offered.

It is expressly stated in the report, however, that the liquors were transported from Boston, Mass., on a through bill of lading and were seized at the freight depot of the railroad carrier in Lewiston before delivery. These facts would require the return of the liquors to the railroad company (the claimant) if they were lawfully introduced into this State under the laws of the United States. The State, however, claims that the liquors were not thus lawfully introduced because they were adulterated or misbranded and hence their introduction into this State was forbidden by the Act of Congress known as "The Pure Food Act" of 1906.

By the terms of that Act, the Pure Food Act (sec. 2), the introduction into any State from any other State of any article of food or drugs adulterated or misbranded within the meaning of the Act, is prohibited. By sec. 6 of the Act, the term "drug" includes all medicines and preparations recognized in the United States Pharmacopœia or National Formulary, etc., and whiskey is so recognized in both. By sec. 7, a drug is to be deemed adulterated if, when it is sold under or by a name recognized in the United States Pharmacopœia or National Formulary, it differs from the standard of strength, quality, or purity as determined by the test

laid down in those publications, unless the actual standard of strength, quality and purity be plainly stated on the package containing the drugs.

In the case at bar the bottles were labeled as containing monogram whiskey and were marked "Blend." The alcoholic content was only 36.9 per cent by volume, and the residuum from 100 cubic centimeters was 18 centigrams, while in both the United States Pharmacopœia or National Formulary the standard test for whiskey is from 44 & 55 per cent of alcoholic content, and a residuum of not over 0.5 centigrams. This much lower standard of· strength and purity was not at all stated on the bottles, and hence the liquors were plainly adulterated or misbranded within the meaning of the Act, and their introduction into this State was unlawful.

The claimant contends, however, that before the delivery of the liquors from the carrier to the consignee the State has no jurisdiction to inquire into the character of the liquors, or to question the right to have them introduced into this State. This contention was considered and overruled in *State* v. *Intoxicating Liquors*, 104 Maine, 502, upon the ground that the liquors were within the territory of the State and hence subject to its authority except so far as they were protected by congressional action or inaction under the commerce clause of the federal constitution, and that as to adulterated and misbranded liquors that protection had been removed by the "Pure Food Act." In *Wilkinson* v. *Rahrer*, 140 U. S. 545, 565, the Supreme Court of the United States said of the 'Wilson Act'—— "Congress did not use terms of permission to the State to act, but simply removed an impediment to the enforcement of the State laws in respect to imported packages in their original condition, created by the absence of specific utterance on its part. It imparted no power to the State not then possessed but allowed imported property to fall at once upon its arrival within the local jurisdiction." We think such was the effect of the "Pure Food Act" upon adulterated and misbranded liquors. Whatever the restraint upon the State, and its officers as to unadulterated or properly branded intoxicating liquors in the possession of an interstate carrier within

the State, we think the State can now seize adulterated or misbranded intoxicating liquors wherever it can find them within its territory, even in the possession of an interstate carrier. Such liquors have now no federal protection.

> *Judgment for forfeiture against the liquors.*
> *Judgment against the claimant for costs of libellant.*
> *Liquors ordered destroyed.*